McDANIEL LEWIS, GEORGE SMART AND ALL OTHER CITIZENS, RESIDENTS AND TAXPAYERS OF THE STATE OF NORTH CAROLINA SIMILARLY SITUATED, PLAINTIFFS v. THOMAS J. WHITE, SMITH BAGLEY, HARGROVE BOWLES, JR., JOHN T. CHURCH, E. L. DAVIS, JR., EDWIN GILL, J. GORDON HANES, JR., LEWIS R. HOLDING, W. HANCE HOFLER, THOMAS S. KENAN III, DON S. MATHESON, L. P. McLENDON, JR., JEAN-ELLE (MRS. DAN K.) MOORE, MARY (MRS. JAMES H.) SEMANS, CHARLES STANFORD, JR., EDWARD DURELL STONE, DOING BUSINESS AS EDWARD DURELL STONE ASSOCIATES, AND RALPH REEVES, JR., DOING BUSINESS AS HOLLOWAY-REEVES ARCHITECTS, DEFENDANTS

No. 100

(Filed 26 June 1975)

1. **Injunctions § 11; State § 2.5— State buildings — Art Museum Building Commission — open meetings law**

The open meetings law, G.S. 143-318.1 *et seq.,* does not render void all action taken at a meeting of any governmental body of this State or of one of its political subdivisions if such meeting was not open to the public, and plaintiffs are not entitled to an injunction

prohibiting the Art Museum Building Commission from performing any of its statutory duties or exercising any of its statutory authorities until all of its meetings are held as open meetings.

2. **Injunctions § 11; State § 2.5— State buildings — Art Museum — possible directions by 1975 Legislature**

The possibility that the 1975 General Assembly might give further directions to the Art Museum Building Commission concerning the location and construction of a State Art Museum cannot be the basis for restraining the Commission from acting in accordance with directions previously given.

3. **State § 2.5— Art Museum Building Commission — Executive Budget Act**

The Art Museum Building Commission is subject to the provisions of the Executive Budget Act, G.S. 143-30 through G.S. 143-31.2.

4. **Injunctions § 11; State § 2.5— Art Museum Building Commission — failure to comply with Executive Budget Act — claim for injunctive relief**

Plaintiff's complaint states a claim for relief to enjoin the Art Museum Building Commission from carrying out any activities in relation to the location and construction of an art museum until they comply with certain statutes where it alleges that the Commission has failed to comply with the provisions of the Executive Budget Act requiring it to present its budget to the Director of the Budget, to construct all buildings in strict accordance with budget requests and to refrain from receiving bids on such a construction project until the results of a study and review by the Director of the Budget of the Commission's budget requests have been incorporated into the Commission's plans and specifications for construction of the art museum.

5. **State § 2.5— State buildings — N. C. Capital Building Authority — art museum**

The powers of the North Carolina Capital Building Authority (now the Department of Administration) under G.S. Ch. 129, Art. 7, do not extend to the planning and construction of a State Art Museum since those powers have been specifically conferred on the Art Museum Building Commission by G.S. 143B-58.

6. **State § 2.5— art museum — approval of Governor and Council of State**

The Art Museum Building Commission, having acquired approval of its selection of the site for an art museum from the Governor and Council of State then in office, is not required by G.S. 143B-58(1) to obtain the approval of each succeeding Governor and Council of State taking office prior to the completion of the museum building.

7. **Injunctions § 11; State § 2.5— art museum — allocation of site by Department of Administration**

An allegation that the Department of Administration has not allocated the Polk Prison site to the Art Museum Building Commission for the location of an art museum as required by G.S. 143-341(4)g states a claim for relief to enjoin the Commission from proceeding with its plan to construct an art museum on that site.

Lewis v. White

8. **Injunctions § 11; State § 2.5— art museum — Environmental Impact Statement**

Allegations that the construction of an art museum at the Polk Prison site would significantly affect the quality of the environment of the State and that the Art Museum Building Commission must therefore file an Environmental Impact Statement prior to proceeding with such construction fail to state a claim for injunctive relief against the Commission since there is nothing in the Environmental Policy Act of 1971, G.S. 113A-1 *et seq.*, which makes the filing of such statement a condition precedent to the commencement of construction of a building for which State funds have been appropriated, and since, nothing else appearing, the substitution of an art museum for a prison will not adversely affect the environment.

9. **Injunctions § 11; State § 2.5— art museum — air pollution control — permit from Environmental Management Commission**

Allegations that the parking facilities and the heating and air conditioning units for the proposed art museum are subject to the air quality or emission control standards established pursuant to G.S. 143-215.107 and that the Art Museum Building Commission has not obtained a permit from the Environmental Management Commission are insufficient to state a claim for injunctive relief against the Commission where there is no allegation that or wherein the proposed parking facilities and heating and air conditioning units "contravene or will be likely to contravene such standards," since such contravention or likelihood of contravention is, by the terms of the statute, a condition precedent to the necessity for a permit from the Environmental Management Commission.

10. **State § 2.5—. site of art museum — discretion of Art Museum Building Commission**

The Art Museum Building Commission, with the approval of the Governor, the Council of State and the North Carolina State Capital Planning Commission, may select whatever site it deems most appropriate for the building of a State Art Museum.

11. **Injunctions § 11; State § 2.5— art museum — planning of "Cultural Complex" — claim for injunctive relief**

An allegation that the Art Museum Building Commission has exceeded its statutory authority in that it is planning not only the construction of an art museum but also the construction of a "Cultural Complex," including various other buildings for the purpose of housing therein various activities cultural in nature but not components of an art museum, states a claim for injunctive relief against the Commission since G.S. 143B-58 confers upon the Commission no authority to plan or construct anything but an art museum building and accessories necessary and proper for its successful operation.

12. **State § 4— action against State Commission — doctrine of sovereign immunity**

A suit against a State officer or a State Commission to prevent him or it from performing his or its official duties is a suit against the State within the meaning of the doctrine of sovereign immunity.

**13. State § 4—defense of sovereign immunity — burden of proof**

      Officers who seek to defend an action on the ground of sovereign immunity must show they were acting within the scope of their authority.

**14. Injunctions § 11; State § 4— sovereign immunity — exceeding statutory authority**

      The doctrine of sovereign immunity does not authorize the dismissal of the complaint of a citizen and taxpayer who alleges that the members of a State Commission, in excess of their statutory authority, or contrary to law, propose a diversion of State tax funds from the purpose for which such funds were appropriated or other misuse of such funds or of other State property, or are acting in disregard of a statute designed to protect the State from misuse or waste in the expenditure of its tax funds.

      Justice Moore did not participate in the consideration or decision of this case.

APPEAL by plaintiffs from *Bailey, J.,* at the 27 September 1974 Session of WAKE, heard prior to determination by the Court of Appeals.

      The plaintiffs, citizens, residents and taxpayers of the State of North Carolina brought this action on behalf of themselves and all other citizens, residents and taxpayers of the State similarly situated. The defendants, other than Stone and Reeves, are the members of the Art Museum Building Commission, hereinafter called the Commission. The Defendants Stone and Reeves are architects employed by the Commission.

      The prayer for judgment in the complaint is for a temporary restraining order, a preliminary injunction and a permanent injunction restraining the defendants from any further activities in regard to the location and construction of the proposed State Art Museum Building, hereinafter called the Museum, on the land, just outside the city limits of Raleigh, whereon the Polk Youth Center Prison is presently operating; a permanent injunction restraining the defendants from engaging in activities in relation to the establishment of a "Cultural Complex," or any other activities except the planning of the Museum "in accordance with the statutes"; and a permanent injunction restraining the defendants from carrying out any activities in relation to the location and construction of the Museum until they comply with certain statutes.

Lewis v. White

The complaint purports to allege ten distinct claims as bases for the relief sought. For convenience in discussion thereof, these may be designated as follows:

1. The Commission has exceeded its statutory authority in selecting the Polk Prison site as the site for the Museum;

2. The Commission has exceeded its statutory authority in planning for the construction at the Polk Prison site of a "Cultural Complex," including numerous buildings other than the Museum;

3. The Commission has exceeded its statutory authority by holding secret meetings not open to the press and to members of the public;

4. The 1975 Session of the General Assembly (convened after the filing of this action) "will consider" appropriate directions to the Commission which the Commission is attempting to circumvent by instructing its architects to proceed immediately with the construction of the Museum at the Polk Prison site;

5. The Commission has failed to comply with requirements of the State Budget Act, and, until it does comply therewith, construction of the Museum is beyond its statutory authority;

6. The Commission has failed to consult with the North Carolina Capital Building Authority, which has supervisory authority over the Commission, and thus has exceeded its statutory authority;

7. The Commission has failed to secure the approval by the present Governor of its selection of the Polk Prison site as the site for the Museum;

8. The Commission has failed to follow statutory procedures in procuring the transfer of the Polk Prison site to the Commission;

9. The Commission has failed to comply with the Environmental Policy Act by filing an Environmental Impact Statement as required by that Act;

10. The Commission has failed to obtain from the Board of Water and Air Resources a permit for the construction of the Museum at the Polk Prison site as required by statute.

The allegations in the first claim for relief are incorporated by reference in each of the other claims for relief. The key allegation therein is as follows:

> "7. The Defendant White as Chairman and the fourteen other members of the Art Museum Building Commission individually have exceeded the statutory authority granted to them by selecting for the new North Carolina Art Museum Building a site outside of the North Carolina State Government Center. The site selected by the Chairman and the Members is located outside the city limits of Raleigh on the land now occupied by the Polk Youth Center and adjacent property."

The Commission filed its answer responding separately to each claim for relief, denying certain allegations in each claim. On the same day the Commission moved to dismiss the complaint and, alternatively, for judgment on the pleadings. The stated grounds for the motion are: (1) The court lacks jurisdiction over the subject matter for the reason that this is a suit against the State, which is not alleged to have waived its sovereign immunity against suit, and the plaintiffs are without standing to sue; and (2) the complaint fails to state a claim upon which relief can be granted.

Upon the filing of the complaint, Judge Bailey issued a temporary restraining order and ordered the defendants to appear before him to show cause why a preliminary injunction should not be granted pendente lite. Upon the hearing pursuant to such show cause order and upon the motion of the Commission to dismiss, Judge Bailey dismissed the action against the Commission upon the following grounds: (1) The doctrine of sovereign immunity; (2) the plaintiffs have no standing to sue with reference to Claims No. 3, 5, 6, 7, 8, 9 and 10, and in Claim No. 4 state no facts upon which relief can be granted. Judge Bailey further dismissed the action as to the Defendants Stone and Reeves on the ground that they are not alleged to have taken any action except as architects acting under instructions of the Commission and the action, having been dismissed against the Commission, should also be dismissed as to these defendants.

The judgment of Judge Bailey did not conclude that the plaintiffs' Claims No. 1 and No. 2 fail to state a claim upon which relief can be granted or that the plaintiffs have no standing to sue thereon. As to these two claims for relief, the judgment of dismissal rests upon the doctrine of sovereign immunity.

In their brief the plaintiffs state, "Appellants would concur in a dismissal as to the Defendants Stone and Reeves so long as the individual members of the Commission are not cloaked in governmental immunity."

*Kimzey, Mackie & Smith, by James M. Kimzey and Stephen T. Smith, for plaintiff appellants.*

*Rufus L. Edmisten, Attorney General, by T. Buie Costen, Assistant Attorney General, for State Art Museum Building Commission, defendant appellee.*

*Joyner & Howison, by William T. Joyner, R. C. Howison, Jr., James E. Tucker and Edward S. Finley, Jr., for State Art Museum Building Commission and its named members, defendant appellees.*

*Maupin, Taylor & Ellis, by C. B. Neely, Jr., for defendant architects, appellees.*

LAKE, Justice.

A motion to dismiss for failure to state a claim upon which relief can be granted, like the common law general demurrer, admits, for the purpose of the motion, the well-pleaded material allegations of the complaint, but it does not admit the plaintiff's conclusions of law, such as his interpretation of statutory provisions. *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161.

Deferring, momentarily, consideration of the defendants' claim of sovereign immunity to suit, we consider first the conclusions of the Superior Court that in Claims 3 to 10, inclusive, the complaint fails to state a claim upon which relief can be granted or that the plaintiffs have no standing to sue thereon.

The material allegations of Claim No. 3, summarized, are that all meetings of the Commission have been conducted in secrecy and the Commission has refused to permit minutes, records, tapes or other documentation of its activities to be made available for scrutiny by the press or the public; in this the members of the Commission are exceeding their statutory authority, G.S. 143-318.1 to G.S. 143-318.7, inclusive, requiring such meetings to be open to the press and to the public; actions taken by the members of the Commission at meetings not open to the public are void; consequently, any actions emanating from such meetings should be restrained.

G.S. 143-318.1 provides:

> "*Public policy.*—Whereas the commissions, committees, boards, councils and other governing and governmental bodies which administer the legislative and executive functions of this State and its political subdivisions exist solely to conduct the peoples' business, it is the public policy of this State that the hearings, deliberations and actions of said bodies be conducted openly."

G.S. 143-318.2 requires that all official meetings of the governing and govenmental bodies of the State, including all State Commissions "which have or claim authority to conduct hearings, deliberate or act as bodies politic and in the public interest" shall be open to the public. G.S. 143-318.6 provides that any citizen who is denied access to such a meeting "in addition to other remedies shall have a right to compel compliance with the statute by application to a court for a restraining order, injunction or other appropriate relief."

The prayer for relief as to this claim is that the defendants be enjoined from carrying out any activities which the statute authorizes them to conduct "until all of their meetings are held as public meetings * * * and all minutes * * * and other documentation of their prior secret meetings be made public." The answer of the defendants denies that the meetings of the Commission have been held in secret, except insofar as this is authorized by the statute (G.S. 143-318.3, dealing with executive sessions). However, upon consideration of the motion to dismiss, the allegations of fact in the complaint must be taken as true and the court is not concerned with the denials of those allegations in the answer of the defendants.

[1] We find nothing in G.S. Ch. 143, Art. 33B, which supports the contention of the plaintiffs that all action taken at a meeting of any governmental body of the State, or of one of its political subdivisions, is completely void if such meeting was not open to the public. In the absence of a clear expression of legislative intent that this be the effect of a violation of G.S. 143-318.2, we decline so to hold. The complainants do not seek in this action an order directing that they, and other members of the class for whom they sue, be admitted to future meetings of the Commission or be given the right to examine minutes or other documents showing action taken at meetings heretofore held. They seek to enjoin the Commission from performing any of its statu-

Lewis v. White

tory duties or exercising any of its statutory authorities until *"all* of their meetings are held as open meetings." (Emphasis added.) Such an injunction would make it impossible for the Commission to carry out its statutory duties. Compliance with such an injunction, which would be a condition precedent to the carrying out of further activities by the Commission, could not be shown until there were no more meetings of the Commission to be held.

We find no error in the conclusion and order of the Superior Court with reference to Claim for Relief No. 3.

[2] The allegations of the complaint with reference to Claim for Relief No. 4 are, in summary, that the North Carolina General Assembly, in its 1975 Session, "will consider" giving appropriate directions to the Commission and the defendants should be restrained from acting toward the construction of the Museum at the site chosen by them until the 1975 Session of the General Assembly has an opportunity to give the Commission "appropriate direction." At the time the present suit was filed and at the time the Superior Court entered its order dismissing Claim for Relief No. 4, the 1975 Session of the General Assembly had not been convened, indeed its members had not been elected. The possibility that the 1975 Session of the General Assembly, now in session, may see fit to give further directions to the Commission concerning the location and construction of the Museum cannot be a basis for restraining the Commission from acting in accordance with directions heretofore given.

There was no error in the conclusion and order of the Superior Court with reference to Claim for Relief No. 4.

[4] The material allegations of the complaint with respect to Claim for Relief No. 5, summarized, are that G.S. 143-30 to G.S. 143-31.1, inclusive, a portion of the Executive Budget Act, requires the Commission to present its budget to the Director of the Budget, to construct all buildings in strict accordance with such budget requests and to refrain from receiving bids on such construction projects until the results of a study and review by the Director of the Budget of the Commission's budget requests have been incorporated into the Commission's plans and specifications for the construction of the Museum; the defendants have not attempted to comply with this statutory requirement and, therefore, are acting beyond their statutory authority in planning and constructing the Museum at the Polk Prison prop-

erty; for this reason the defendants should be enjoined from proceeding with the planning and construction of the Museum until they comply with these statutory requirements.

It is the contention of the defendants that the Commission was created with the duty to construct a building of a particular and extraordinary type and character and that the construction of such a building was not contemplated by the provisions of G.S. 143-30 through G.S. 143-31.2. Thus, they say, these statutes are not applicable to them.

G.S. 143-1 provides that the word "Commission" as used in the Executive Budget Act, with an exception not here pertinent, shall mean "any State agency, and any other agency, person or commission by whatsoever name called, that uses or expends or receives any State funds." G.S. 143-16 provides, "Every State * * * commission * * * shall operate under an appropriation made in accordance with the provisions of this Article, and no State * * * commission * * * shall expend any money except in pursuance of such appropriation and the rules, requirement and regulations made pursuant to this Article." G.S. 143-28 provides, "It is the intent and purpose of this Article that every * * *commission * * * that expends money appropriated by the General Assembly or money collected by or for such * * * commission * * * under any general law of this State, shall be subject to and under the control of every provision of this Article."

G.S. 143-30 provides that the several commissions of the State to which appropriations are made for permanent improvements "shall, before any of such appropriations * * * are available or paid to them * * * budget their requirements and present the same to the Director of the Budget." G.S. 143-31 provides that all buildings and other permanent improvements shall be erected in strict accordance with the budget requests of such commission filed with the Director of the Budget.

[3] The obvious purpose of these statutory provisions is to guard against improvident, extravagant or unauthorized expenditure of State funds in the construction of a building by any commission or agency of the State. We find nothing in the Executive Budget Act which supports the contention of the defendants that they are not subject to its provisions. We find nothing in G.S. Ch. 140, Art. 1A, by which the Commission was originally created or in G.S. 143B-58 by which the Com-

Lewis v. White

mission was "recreated" and endowed with certain powers, which indicates a legislative intent to exempt the Commission from the requirements of the Executive Budget Act. The answer of the defendants denies all allegations of the plaintiffs' Claim for Relief No. 5 with reference to the failure of the defendants to comply with the requirements of that Act. However, as above noted, upon consideration of a motion to dismiss, the Superior Court, and, upon appeal, this Court, must take as true the allegations of the complaint concerning the failure of the defendants to comply with the Executive Budget Act.

[4] We, therefore, hold that Claim for Relief No. 5 does state a claim upon which relief may be granted.

[5] The material allegations of the complaint with reference to Claim for Relief No. 6 are that G.S. 129-40 to G.S. 129-47, inclusive, provide that the North Carolina Capital Building Authority shall have and exercise supervision over the construction of all State buildings within the City of Raleigh and its environs, except those specifically exempted by G.S. 129-42.1, which exemption does not include the Museum; the defendants have sought to construct the Museum without consulting the North Carolina Capital Building Authority and, therefore, are acting in excess of their statutory authority.

G.S. 129-42 conferred upon the North Carolina Capital Building Authority powers which have now been transferred by G.S. 143A-86 to the Department of Administration. These powers include the power to select and employ architects, engineers and other consultants for the planning and supervision of the construction of buildings. The selection of such architects and engineers is to be made by the Authority (now the Department of Administration) from nominees of the agency or institution for which the building is to be constructed. G.S. 129-42.2. It is provided in G.S. 129-42.1 that the Authority shall exercise such powers for certain specifically named agencies and institutions of the State, any other State agency or institution which elects to come under the provision of this Article of the General Statutes "and all State agencies in the City of Raleigh and its environs," with exceptions not here pertinent.

G.S. 143B-58 by which the Commission was "recreated" expressly empowers the Commission "to employ architects to prepare plans for the State Art Museum Building, to assist and advise the architects in the preparation of those plans, and to

approve on behalf of the State all plans for the State Art Museum Building." It also empowers the Commission to enter into contracts on behalf of the State for the construction of a museum building and for the employment of consultants and the purchase of services, materials, furnishings and equipment for the Museum. It further provides that the Commission shall have the power to "supervise generally the location, construction, furnishing, equipment, renovating and care of the State Art Museum Building," and authorizes it to "call upon the Department of Administration [the transferee of the powers of the North Carolina Capital Building Authority] for such assistance as the Commission may require in carrying out its duties."

Since the Commission proposes to construct the Museum at the present site of the Polk Prison, which we judicially notice to be within the environs of the City of Raleigh, the Commission is among the State agencies included within G.S. 129-42.1, nothing else appearing. However, if the Commission be thus brought within G.S. Ch. 129, Art. 7, there is an obvious conflict between G.S. 129-42 conferring upon the Authority the power to select and employ architects and other consultants and G.S. 143B-58 conferring that power upon the Commission. G.S. 143B-58, being the specific statute, controls in this situation. *Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 260, 166 S.E. 2d 663; *Food Stores v. Board of Alcoholic Control*, 268 N.C. 624, 151 S.E. 2d 582; *Utilities Comm. v. Coach Co.*, 236 N.C. 583, 73 S.E. 2d 562; *Young v. Davis*, 182 N.C. 200, 108 S.E. 630; Strong, N. C. Index 2d, Statutes, § 5. We, therefore, hold that the powers of the North Carolina Capital Building Authority (now the Department of Administration) under Ch. 129, Art. 7, of the General Statutes do not extend to the planning for and construction of the Museum.

We find no error in the conclusion and order of the Superior Court with reference to Claim for Relief No. 6.

[6] The material allegations of Claim for Relief No. 7, summarized, are that the Commission's selection of the present site of the Polk Prison as the site for the construction of the Museum does not have the approval of the present Governor, whereas G.S. 143B-58(1) requires such approval and, therefore, the Commission is acting in excess of its statutory authority and should be restrained until such approval by the present Governor is obtained.

G.S. 143B-58 provides:

*"Art Museum Building Commission—creation, powers and duties.*—There is hereby recreated the Art Museum Building Commission of the Department of Cultural Resources and the State Art Museum Building Commission shall have the following powers and duties:

"(1) With the approval of the Governor and Council of State and the North Carolina State Capital Planning Commission to determine the site for the building of the State Art Museum in accordance with directions, if any, from the General Assembly. * * * "

The defendants in their answer assert that the present Governor has given his approval in writing to the Commission's selection of the site for the Museum. As above noted, this answer may not be taken into account in consideration of the motion to dismiss, since the allegations of fact in the complaint are taken to be true for the purposes of determining such motion.

It does not appear from the complaint when the Commission determined upon the Polk Prison site as the location of the Museum, nor does it appear that such determination did not have the approval of the then Governor and Council of State. The allegation that it does not have the approval of the "current" Governor would seem to imply that the site selection did have the approval of his predecessor. We find nothing in G.S. 143B-58(1) to suggest that, having obtained the approval of the Governor and Council of State then in office, the Commission must continue to seek and obtain the approval of each succeeding Governor and Council of State taking office prior to the completion of the Museum Building.

We find no error in the conclusion and order of the Superior Court concerning Claim for Relief No. 7.

[7] The material allegations of Claim for Relief No. 8, summarized, are that the Polk Prison site is currently owned by the Department of Administration or by the Department of Social Rehabilitation & Control; before the property can be transferred to the Commission, the requirements of G.S. 146-74 through G.S. 146-78 or, alternatively, the provisions of G.S. 160A-274 and G.S. 143-341(4)g must be met, which has not been done; consequently, the defendants are acting without authority in planning the construction of the Museum upon that site.

In their answer to Claim for Relief No. 8,. the defendants admit the applicability to this matter of G.S. 143-341 (4) g but assert that they have complied with its provisions. They deny the applicability to this matter of the other statutes here relied upon by the plaintiffs.

G.S. 146-74 to G.S. 146-78, inclusive, deal with conveyances in fee of State owned land. In the present matter, the defendants do not propose any conveyance by the State of the land on which they propose to locate the Museum. Therefore, these statutes are not applicable and afford no basis for any relief sought by the plaintiffs in this action. G.S. 160A-274 relates to exchanges, leases, sales and agreements for the joint use of property entered into by governmental units. It has no application to this matter.

G.S. 143-341 relates to the powers and duties of the Department of Administration. Paragraph (4) g provides that the Department of Administration has the power:

"To allocate and reallocate land, buildings, and space in buildings to the several State agencies, in accordance with rules adopted by the Governor with the approval of the Council of State. Provided, that the authority granted in this paragraph shall not apply to the State Legislative Building and grounds."

This statute, as the defendants in their answer concede, does apply to the present matter. Without allocation of the proposed site to the Commission by the Department of Administration, the Commission would be acting in excess of its statutory authority were it to construct the Museum thereon. The allegation by the defendants in their answer that they have complied with this statute may not be taken into account by the Superior Court, or by us, in determining the motion of the defendants to dismiss for failure to state a claim on which relief can be granted.

Therefore, Claim for Relief No. 8 states a claim upon which relief may be granted.

[8] The material allegations of the complaint with reference to Claim for Relief No. 9 are that the defendants have failed to comply with the Environmental Policy Act, in that the construction which they propose at the Polk Prison site would significantly affect the quality of the environment of the State

and so the defendants must file an Environmental Impact State-
ment prior to proceeding with such construction, which they
have not done.

In their answer to this claim for relief, the defendants
allege that the proposed construction will not significantly affect
the quality of the environment of the State and, consequently,
no such statement is required to be filed by them.

The statutes cited by the plaintiffs in this claim for relief
constitute the Environmental Policy Act of 1971. G.S. 113A-2
states the purposes of this Act as follows:

"To declare a State policy which will encourage the
wise, productive, and beneficial use of the natural resources
of the State without damage to the environment, maintain
a healthy and pleasant environment, and preserve the nat-
ural beauty of the State; to encourage an educational
program which will create a public awareness of our en-
vironment and its related programs; to require agencies
of the State to consider and report upon environmental
aspects and consequences of their actions involving the
expenditure of public moneys; and to provide means to
implement these purposes."

G.S. 113A-4 provides that "to the fullest extent possible"
any State agency shall include in every recommendation or
report on proposals for legislation and actions involving expen-
diture of public moneys for projects and programs significantly
affecting the quality of the environment of this State, a detailed
statement setting forth the environmental impact of the pro-
posed action and certain other types of information.

Nothing in this Act makes the filing of such statement a
condition precedent to the commencement of construction of a
building for which State funds have been appropriated. Fur-
thermore, the complaint does not purport to state any respect in
which the construction of an art museum at the present site of
the Polk Prison could adversely affect the environment of the
State or its natural beauty or the beneficial use of its natural
resources. It is perfectly obvious that, nothing else appearing,
the substitution of an art museum for a prison will not adversely
affect the environment.

In the absence of any allegation in the complaint as to
how such proposed substitution could adversely affect "the qual-

ity of the environment of the State," we find no error in the conclusion and order of the Superior Court dismissing Claim No. 9.

[9] The material allegations of the complaint with reference to Claim for Relief No. 10 are that the defendants have not obtained a permit from the Board of Water & Air Resources as required by G.S. Ch. 143, Art. 21B (G.S. 143-215.105 to G.S. 143-215.114, inclusive), and, consequently, the proposed construction by them at the site of the Polk Prison is in excess of their statutory authority.

G.S. Ch. 143, Art. 21B, deals with air pollution control. It declares the policy of the State to be "to provide for the conservation of its water and air resources." G.S. 143-215.105; G.S. 143-211. It provides that the air quality program of the State shall be administered by the Department of Natural & Economic Resources (formerly the Board of Water & Air Resources). G.S. 143-215.106. The Environmental Management Commission is directed to develop, after proper study, a comprehensive plan or plans for the prevention, abatement and control of air pollution in the State. G.S. 143-215.107. It is provided in G.S. 143-215.108 that after the effective date of any air quality or emission control standards so established, no person shall, without first obtaining a permit from the Environmental Management Commission and complying with the conditions prescribed by such permit, "establish or operate any air contaminant source" or do other specified things, none of which other things is alleged to be contemplated by the defendants in the proposed construction of the Museum at the Polk Prison site.

The plaintiffs allege in Claim No. 10 that "the parking facilities and the heating and air conditioning units for the Art Museum Building are subject to the air quality or emission control standards which have been established pursuant to G.S. 143-215.107. Assuming, as we must for the purpose of passing upon the motion to dismiss, that this allegation is true, the plaintiffs do not allege that or wherein the proposed parking facilities or the proposed heating and air conditioning units for the proposesd Museum "contravene or will be likely to contravene such standards." Such contravention, or likelihood of contravention, is, by the terms of the statute itself, a condition precedent to the necessity for a permit from the Environmental Management Commission. G.S. 143-215.108.

Consequently, there was no error in the order of the Superior Court dismissing Claim No. 10.

Although the Superior Court did not dismiss Claim No. 1 or Claim No. 2 on the ground that the allegations thereof were insufficient to state a claim upon which relief can be granted or that the plaintiffs lack standing to sue thereon, since this matter must be remanded to the Superior Court for further proceedings, we deem it advisable to consider the sufficiency of the complaint in these respects also.

[10] The material allegations of Claim No. 1 are that the clear intent of the statutes creating the Commission and conferring powers upon it "is that the location of the North Carolina Art Museum Building should be within the North Carolina State Government Center, which is defined as that area of the City of Raleigh bounded by Edenton Street, Person Street, Peace Street, the Right of Way of the Main Line of the Seaboard Coastline Railway, and North McDowell Street"; the defendants "have exceeded the statutory authority granted to them by selecting for the new North Carolina Art Museum Building a site outside of the North Carolina State Government Center," this being the Polk Prison site; the defendants should, therefore, be restrained from proceeding with such course of action.

The Commission was created by Chapter 1142 of the Session Laws of 1967. By that Act it was given the power and duty, among others, "with the approval of the Governor and Council of State and the North Carolina State Capital Planning Commission, to determine the site for the building of the State Art Museum on land which has been denominated as Heritage Square," which land is that designated in the complaint as the North Carolina State Government Center.

The Act of 1967 was amended by Chapter 545 of the Session Laws of 1969 by deleting from the above quoted provision the words, "on land which has been denominated as Heritage Square."

By Chapter 476, § 39, of the Session Laws of 1973, the Commission was "recreated" and declared to have the certain powers and duties, including the power "with the approval of the Governor and Council of State and the North Carolina State Capital Planning Commission to determine the site for the building of the State Art Museum in accordance with directions, if any, from the General Assembly." This is the present power

of the Commission with respect to the determination of the site for the construction of the Museum. G.S. 143B-58.

Both the language of G.S. 143B-58 and its legislative history lead, inescapably, to the conclusion that, no further directions having been given to the Commission by the General Assembly, the Commission, with the approval of the Governor, the Council of State and the North Carolina State Capital Planning Commission, may select whatever site it deems most appropriate for the building of the Museum. It is not limited to "Heritage Square" or even to the City of Raleigh. The Legislature having given this wide discretion to the Commission, subject only to the specified approvals, the courts are not authorized to substitute their judgment for that of the Commission concerning the proper location of the Museum.

It necessarily follows that Claim No. 1 does not state a claim upon which relief can be granted and the defendants' motion to dismiss this claim for that reason should have been granted.

[11] The material allegations of the complaint with respect to Claim No. 2 are that the Commission has exceeded its statutory authority in that it is planning not only the construction of an art museum but also the construction of a "Cultural Complex," including various other buildings at the Polk Prison site for the purpose of housing therein various activities, cultural in nature but not components of an art museum, and should be restrained from continuing such unauthorized activity.

The defendants in their answer to Claim No. 2 deny any plans for or activities in connection with the construction of any building other than the Museum. This answer raises a question of fact, but for the purpose of passing upon the motion to dismiss the complaint, the allegations of the complaint must be deemed admitted. *Sutton v. Duke, supra.* G.S. 143B-58 confers upon the Commission no authority to plan or construct anything but an art museum building and accessories necessary and proper for its successful operation.

Consequently, Claim No. 2 does state a claim upon which relief may be granted.

The doctrine of sovereign immunity—that the State cannot be sued in its own courts, or in any other, without its consent—is firmly established in the law of North Carolina. *Orange*

*County v. Heath,* 282 N.C. 292, 192 S.E. 2d 308; *Steelman v. City of New Bern,* 279 N.C. 589, 184 S.E. 2d 239; *Electric Co. v. Turner,* 275 N.C. 493, 168 S.E. 2d 385; *Shingleton v. State,* 260 N.C. 451, 133 S.E. 2d 183; *Pharr v. Garibaldi,* 252 N.C. 803, 115 S.E. 2d 18; *Schloss v. Highway Commission,* 230 N.C. 489, 53 S.E. 2d 577; *Insurance Co. v. Unemployment Compensation Commission,* 217 N.C. 495, 8 S.E. 2d 619. In *Electric Co. v. Turner, supra,* Justice Higgins, speaking for this Court, called the doctrine "axiomatic." In *Schloss v. Highway Commission, supra,* Justice Barnhill, later Chief Justice, speaking for the Court, said it "is an established principle of jurisprudence in all civilized nations."

[12] It is equally well established that a suit against a state officer or a state commission to prevent him or it from performing his or its official duties is a suit against the State within the meaning of this doctrine. *Electric Co. v. Turner, supra; Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 118 S.E. 2d 385; *Insurance Co. v. Unemployment Compensation Commission, supra.* As Chief Justice Devin said in *Williamston v. R. R.,* 236 N.C. 271, 72 S.E. 2d 609, "Courts will not undertake to control the exercise of discretion and judgment on the part of members of a commission in performing the functions of a State agency." *Accord: Pharr v. Garibaldi, supra.*

[13] On the other hand, the official status of the defendants, standing alone, does not immunize them from suit. *Pharr v. Garibaldi, supra.* As Justice Barnhill, later Chief Justice, speaking for the Court in *Schloss v. Highway Commission, supra,* said: "When public officers whose duty it is to supervise and direct a State agency attempt to enforce an invalid ordinance or regulation, or invade or threaten to invade the personal or property rights of a citizen *in disregard of law,* they are not relieved from responsibility by the immunity of the State from suit, even though they act or assume to act under the authority and pursuant to the directions of the State." (Emphasis added.) *Accord: Shingleton v. State, supra; Teer v. Jordan,* 232 N.C. 48, 59 S.E. 2d 359; *Pue v. Hood,* 222 N.C. 310, 22 S.E. 2d 896. "While the activities of governmental agencies engaged in public service imposed by law ought not to be stayed or hindered merely at the suit of an individual who does not agree with the policy or discretion of those charged with responsibility, the right of a citizen and taxpayer to maintain an action in the courts to restrain the unlawful use of public funds to his injury cannot

be denied." *Teer v. Jordan, supra.* Officers who seek to defend an action on the ground of sovereign immunity must show they are acting within the scope of their authority. *Schloss v. Highway Commission, supra.*

The proceeds of State tax levies appropriated by the General Assembly for one purpose may not lawfully be disbursed by State officers for a different purpose and a citizen and taxpayer of the State may sue to restrain such illegal diversion of public funds. *Styers v. Phillips,* 277 N.C. 460, 178 S.E. 2d 583; *State v. Davis,* 270 N.C. 1, 153 S.E. 2d 749; cert. den., 389 U.S. 828; *Teer v. Jordan, supra; Gardner v. Retirement System,* 226 N.C. 465, 38 S.E. 2d 314; *Freeman v. Commissioners of Madison,* 217 N.C. 209, 7 S.E. 2d 354. In *Wishart v. Lumberton,* 254 N.C. 94, 118 S.E. 2d 35, Justice Rodman, speaking for the Court, said, "If the governing authorities were preparing to put public property to an unauthorized use, citizens and taxpayers had the right to seek equitable relief." In *Merrimon v. Paving Co.,* 142 N.C. 539, 55 S.E. 366, Justice Henry G. Connor, speaking for the Court, said, "That a citizen in his own behalf, and that of all other taxpayers, may maintain a suit in the nature of a bill in equity to enjoin the governing body of a municipal corporation *from transcending their lawful powers* or violating their legal duties in any mode which will injuriously affect the taxpayers— such as making an unauthorized appropriation of the corporate funds, or an illegal *or wrongful* disposition of the corporate property, etc.,—is well settled." (Emphasis added.)

[14] Thus, the doctrine of sovereign immunity does not authorize the dismissal of the complaint of a citizen and taxpayer who alleges that the members of a State commission, in excess of their statutory authority, or contrary to law, propose a diversion of State tax funds from the purpose for which such funds were appropriated or other misuse of such funds or of other State property, or are acting in disregard of a statute designed to protect the State from misuse or waste in the expenditure of its tax funds. As above noted, the plaintiffs' Claims No. 2, 5 and 8 allege such proposed acts of the defendants in excess of their statutory authority. In their answer to these respective claims for relief, the defendants have denied any act or proposed act in excess of their authority or in violation of the statutes relied upon by the plaintiffs. Thus, as to these claims for relief, the pleadings raise issues of fact which have not been determined by the Superior Court. The burden is upon the plaintiffs to prove

the alleged violations or proposed violations of the law by the defendants. When given the opportunity to present their evidence in support of their allegations, they may or may not "get to first base," but they are entitled to their turn at bat, which right the judgment of the Superior Court erroneously denied them.

We, therefore, remand this matter to the Superior Court of Wake County for trial of the issues raised by the pleadings with reference to Claims for Relief No. 2, 5 and 8. The judgment of the Superior Court dismissing Claims for Relief No. 1, 3, 4, 6, 7, 9 and 10 is affirmed. The judgment of the Superior Court dismissing the action as against the Defendants Stone and Reeves is affirmed.

Affirmed in part.

Reversed in part and remanded.

Justice MOORE did not participate in the consideration or decision of this case.