LegalZoom.com, Inc. v. N. Carolina State Bar, 2014 NCBC 9.

| STATE OF NORTH CAROLINA | | IN THE GENERAL COURT OF JUSTICE |
|---|---|---|
| | | SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | | 11 CVS 15111 |

| | | |
|---|---|---|
| LEGALZOOM.COM, INC., | ) | |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND OPINION** |
| THE NORTH CAROLINA STATE | ) | |
| BAR, | ) | |
| | ) | |
| Defendant and Counter-Plaintiff. | ) | |
| | ) | |

{1}     THIS MATTER is before the court on LegalZoom.com, Inc.'s Motion for Partial Judgment on the Pleadings ("LegalZoom's Motion") and The North Carolina State Bar's Motion for Judgment on the Pleadings ("State Bar's Motion"). For the reasons stated below, LegalZoom's Motion is DENIED, and the State Bar's Motion is GRANTED in part and DENIED in part.

> *Carlton Law PLLC, by Alfred P. Carlton, Jr., and Nexsen Pruet, PLLC, by R. Daniel Boyce, Eugene Boyce, and Thomas J. Ludlam, for Plaintiff LegalZoom.com, Inc.*
>
> *North Carolina Department of Justice, by I. Faison Hicks, Special Deputy Attorney General, for Defendant The North Carolina State Bar.*

Gale, Judge.

## I.    PROCEDURAL HISTORY

{2}     LegalZoom, Inc. ("LegalZoom") filed its Complaint on September 30, 2011 seeking declaratory and injunctive relief. The matter was designated a complex business case and assigned to the undersigned on November 7, 2011. The North Carolina State Bar ("State Bar") moved to dismiss the Complaint on February 22, 2012. By its August 27, 2012 Order, the court denied the State Bar's Motion to Dismiss in part, but deferred ruling on the issue of whether LegalZoom is engaged in the unauthorized practice of law until the State Bar elected whether to

file a counterclaim seeking to enjoin LegalZoom.  The State Bar filed its Answer, Counterclaim, and Motion for Preliminary and Permanent Injunction on September 21, 2012, and an Amended Answer and Counterclaim on October 1, 2012, including a request that LegalZoom be enjoined.   LegalZoom replied to the counterclaim on October 31, 2012.

{3}     LegalZoom filed its Motion for Partial Judgment on the Pleadings on December 20, 2012, which was limited to the issue of whether the State Bar must register LegalZoom's prepaid legal services plans.  The State Bar filed its Motion for Judgment on the Pleadings on January 17, 2013.  The Motions have been fully briefed, a hearing was held on June 18, 2013, and the Motions are ripe for disposition.

## II.    FACTUAL BACKGROUND

{4}     The court does not make findings of fact in ruling upon a Rule 12(c) motion, and in considering the motion, the nonmovant's factual averments are assumed to be true. *Ragsdale v. Kennedy*, 286 N.C. 130, 137, 209 S.E.2d 494, 499 (1974) (internal citations omitted).

{5}     The court is permitted, when assessing a Rule 12(c) motion, to consider exhibits attached to and referenced in the nonmovant's pleadings, and exhibits attached or referred to in the movant's pleadings so long as the nonmovant has made admissions regarding those exhibits. *See Reese v. Charlotte-Mecklenburg Bd. of Educ.*, 196 N.C. App. 539, 545–46, 676 S.E.2d 481, 486 (2009).  The court may further consider facts of which it may take judicial notice, so long as any such fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  N.C. R. Evid. 201(b) ("Rule 201"); *see also Hope – A Women's Cancer Ctr., P.A. v. State*, 203 N.C. App. 593, 597, 693 S.E.2d 673, 676 (2010).

{6}     In its Complaint, LegalZoom pleads that its services are "available on the Internet at www.LegalZoom.com." (Compl. for Declaratory and Injunctive

Relief ("Compl.")¶ 9.)  The court concludes that it may take judicial notice of the information provided on LegalZoom's website pursuant Rule 201.  *See Blackburn v. Bugg*, No. COA11-1349, 2012 N.C. App. LEXIS 485, at * 11–12, 723 S.E.2d 585 (N.C. App. Ct. 2012); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'") (quoting Fed. R. Evid. 201(b)).

{7}     The factual statement provides context for these pending motions in accordance with these standards.

{8}     LegalZoom, through its website, www.LegalZoom.com, offers two services: (1) a legal document preparation service; and (2) in those states where permitted, prepaid legal services plans.  (Compl. ¶ 9; Am. Answer ¶ 9.)  LegalZoom currently offers its document preparation service nationwide, including in North Carolina, and offers its prepaid legal services plans throughout much of the United States.  (Compl. ¶ 9.)  Its prepaid legal services plans are not presently offered in North Carolina because they have not yet been registered.

### A. The State Bar's Inquiry Into LegalZoom's Online Legal Document Preparation Service

{9}     In March 2003, the State Bar's Authorized Practice Committee ("APC") opened an inquiry into whether LegalZoom's online legal document preparation service constituted the unauthorized practice of law ("UPL").  (Compl. ¶ 20, Ex. 1; Am. Answer ¶ 20.)  On August 26, 2003, the APC advised LegalZoom by letter that it had "voted to dismiss this complaint because the evidence was insufficient to support a finding of probable cause that [LegalZoom was] engaged in the unauthorized practice of law."  (Compl. Ex. 3; Am. Answer ¶ 23.)

{10}    On January 30, 2007, the APC notified LegalZoom by letter that it had again opened an inquiry into whether LegalZoom's activities constitute UPL.  (Compl. Ex. 4; Answer ¶ 24.)  A number of letters followed.  LegalZoom responded to

the APC's letter on February 13, 2007, explaining its contention that LegalZoom did not furnish legal advice or guidance, and did not engage in UPL. (Compl. Ex. 5; Am. Answer ¶ 25.) On May 5, 2008, the APC sent LegalZoom a letter, captioned "LETTER OF CAUTION – Cease and Desist" ("Cease and Desist Letter"), which states that the APC "concluded that there is probable cause to believe that LegalZoom's conduct constituted the unauthorized practice of law . . . [and] voted to issue this Letter of Caution to notify you of its decision and to demand that you stop engaging in your activities now." (Compl. Ex. 6; Am. Answer ¶ 26.) The letter concludes that, "Legalzoom's conduct as described above is illegal in North Carolina and must end immediately," and requests that LegalZoom "provide a response with evidence that [it has] have complied with the Committee's decision within 15 days of [its] receipt of this letter." (Compl. Ex. 6.)

{11} LegalZoom responded to the Cease and Desist Letter on June 13, 2008 challenging the APC's conclusions, (Compl. Ex. 7; Am. Answer ¶ 27,) and providing a legal opinion drafted by LegalZoom's North Carolina counsel which concludes that the "document preparation and filing service provided by Plaintiff does not constitute the 'organizing' of a corporation, and therefore is not the unauthorized practice of law . . . ." (Compl. ¶ 30, Ex. 8; Am. Answer ¶ 8.)[1]

{12} By letter dated June 17, 2008, the APC acknowledged receipt of LegalZoom's June 13, 2008 response letter. The State Bar did not thereafter institute any legal proceeding against LegalZoom until filing its Counterclaim in this action. (Compl. Ex. 9; Am. Answer ¶¶ 31–32, 34.)

{13} The State Bar has made copies of its Cease and Desist Letter and LegalZoom's June 13, 2008 response letter publicly available upon request, including to bar officials in other states who referenced the letter in their own investigations, and the APC's meeting minutes reflecting the decision to issue the Cease and Desist Letter were posted on the State Bar website for some period of time. (Compl. ¶ 35; Am. Answer ¶ 35.) LegalZoom avers that the State Bar's

---

[1] LegalZoom's document preparation services are not limited to incorporation.

Counsel has also made statements to third parties expressing his opinion that LegalZoom's conduct is illegal in North Carolina. (Compl. ¶ 36; Am. Answer ¶ 36.)

## B. LegalZoom's Attempts to Register its Purported Legal Services Plans

{14} LegalZoom has two legal service plans: one for consumers and one for business users. On July 14, 2010, LegalZoom sent a letter to the State Bar seeking to register its consumer "Advantage Plus Plan" as a prepaid legal services plan. (Compl. Ex. 10; Am. Answer. ¶ 45.)

{15} The APC responded on September 30, 2010 by letter, (Compl. Ex. 11; Am. Answer ¶¶ 41–42.), informing LegalZoom that its initial registration statement was deficient in three respects: (1) it did not include the required "list of the names, addresses, and telephone numbers of all North Carolina licensed attorneys who have agreed to participate in the plan"; (2) it did not include the required "notarized certification forms from each attorney who has agreed to participate in the plan"; and (3) it did not include the marketing material the APC needed to review. (Compl. Ex. 11.) The letter raised an additional concern regarding the lack of a membership plan for individuals who plan to purchase the Advantage Plus Plan. (Compl. Ex. 11.) Finally, the APC stated that:

> It appears from the material you submitted for LegalZoom [Advantage Plus Plan] that LegalZoom continues to conduct business in a way that the [APC] prohibited in its May 5, 2008 cease and desist letter. You are offering plan members an opportunity to get a 10% discount off the price of legal documents prepared by LegalZoom. This service in your plan violates the very essence of a prepaid legal services plan, which is that a North Carolina licensed attorney must provide the legal services. Please respond to that concern.

(Compl. Ex. 11.)

{16} LegalZoom responded on October 14, 2010 with two letters. The first contends that the Cease and Desist Letter did not and could not prohibit any activity, and, that, in any event, the State Bar does not itself have power to declare LegalZoom's practices to be illegal and must rather seek court action, such that the Cease and Desist Letter or the State Bar's unilateral determination is not a basis

for refusing to register the Advantage Plus Plan.  (Compl. Ex. 12; Am. Answer ¶ 44.)  The second letter: (1) provided the name, address, and telephone number of one attorney who would provide the plan's legal services; (2) clarified that LegalZoom was attempting to register two plans: the Business Advantage Pro Plan (available to businesses) and the Legal Advantage Pro Plan (available to individuals); and (3) included what LegalZoom contends is the certification for the attorney and additional marketing materials for the plans.  (Compl. Ex. 13; Am. Answer ¶ 41.)

{17}   The APC, through its legal counsel, responded on November 18, 2010 that, after considering the initial registration statement at its October 27, 2010 meeting, the APC "declined to register LegalZoom [Advantage Plus Plan] as it had several concerns about the plan as offered."  (Compl. Ex. 14; Am. Answer ¶ 45.)  First, the APC still had concerns that the plan offered its participants a discount on LegalZoom's legal document preparation services, which the APC believed rendered it unable to register the plan "since a component of it does not satisfy the definition of a prepaid legal service plan and violates [North Carolina's] unauthorized practice statutes."  (Compl. Ex. 14.)  Second, because LegalZoom desired to register two separate plans, each plan must be registered separately.  (Compl. Ex. 14; Am. Answer ¶ 45.)  Third, the APC was concerned that LegalZoom identified only one attorney to provide all plan services, and noted that an attorney certification had not been submitted for that attorney.  (Compl. Ex. 14; Am. Answer ¶ 45.)  The APC requested a response by December 10, 2010, and requested notice by January 7, 2011 if LegalZoom desired to appear before the APC at its next meeting on January 19, 2011.  (Compl. Ex. 14; Am. Answer ¶ 45.)

{18}   LegalZoom responded on December 29, 2010.  (Compl. Ex. 15; Am. Answer ¶ 46.)  LegalZoom represented that it had removed the discount on the legal document preparation service from the prepaid legal service plans it was seeking to register; that it did want to register two separate plans and would submit separate applications if necessary; and that it had obtained a second attorney who agreed to provide services for the plans.  (Compl. Ex. 15; Am.  Answer ¶ 46.)  On March 24, 2011, the APC responded that LegalZoom needed to submit separate applications

for the two plans.  (Compl. Ex. 16; Am. Answer ¶ 47.)  The APC also raised its concern regarding how LegalZoom would notify North Carolina residents that the discount on the legal document preparation services was not available to them, noting that the discount was still listed on LegalZoom's website.  (Compl. Ex. 16; Am. Answer ¶ 47.)

{19}  The APC met again to consider LegalZoom's applications on April 20, 2011.  (Compl. Ex. 17; Am. Answer ¶ 47.)  By letter dated April 28, 2011, the APC informed LegalZoom that an additional concern had been raised at the meeting: whether North Carolina residents would still have access to the legal document preparation service from the same website through which they would be accessing the prepaid legal services plans, and asked LegalZoom to respond by May 28, 2011.  (Compl. Ex. 17; Am. Answer ¶ 47.)

{20}  LegalZoom responded on July 8, 2011 that both the document preparation service and the prepaid legal services would be available via its website, but insisted that "there is no legal basis to deny registration of the pre-paid plans based on the legal document service."  (Compl. Ex. 18; Am. Answer ¶ 48.)

{21}  Sometime before August 18, 2011, counsel for LegalZoom telephoned the president of the State Bar to request a meeting regarding the registration of LegalZoom's prepaid legal services plans.  (Comp. Ex. 19; Am. Answer ¶ 50.)  The State Bar responded by email on August 18, 2011 that it did "not believe such a meeting would be productive at this time" and that it would "provide a more detailed written response to [LegalZoom's] issues very soon."  (Compl. Ex. 19; Am. Answer ¶ 50.)

{22}  The APC's next meeting was scheduled for October 18, 2011.  (The North Carolina State Bar's Br. in Opp'n to LegalZoom's Mot. for Partial J. on the Pleadings ("State Bar Opp'n Br.") 18.)  Prior to this meeting, the State Bar had not issued a final determination whether it would register the plans, and if so, its basis for doing so.

{23}    LegalZoom filed its Complaint on September 30, 2011.  It has never appeared before a meeting of the APC.  It has not demanded a hearing before the State Bar.

{24}    Two things remain unclear after a review of the correspondence:  first, the basis for the State Bar's doubts that LegalZoom's legal services plans do not meet the statutory definition of a prepaid legal service plan and whether those doubts would ultimately lead to a final decision to refuse to register them;  and second, whether the State Bar separately contends it can refuse to register the plans based on its opinion that the document preparation service with which they are offered constitutes UPL.

## C. The Nature of LegalZoom's Document Preparation Services

{25}    A customer using the LegalZoom internet document preparation program chooses the document he wishes to prepare.  He then interacts with the software and provides information that is incorporated into templates.

{26}    LegalZoom indicates that the form language included in its templates was prepared before any customer interaction and does not change or vary depending upon what information the customer provides.  (Compl. ¶10.)

{27}    LegalZoom calls its process "LegalZip," and refers to it as a "branching" technology.  (Compl. Ex. 5.)  As the customer proceeds, the pre-existing templates are populated with information the customer provides, and LegalZoom equates the software to the modern technological equivalent of a printed form book or do-it-yourself kit.  (Compl. ¶¶10, 13.)  It contends that it exercises no discretion or independent legal judgment in response to customer choice.  (Compl. ¶16.)

{28}    A number of LegalZoom's templates are based on or are verbatim recitations of forms issued by North Carolina state agencies.  Others are prepared or approved by North Carolina licensed attorneys before being made available online.  (Compl. ¶13.)

{29}    The State Bar, in contrast, contends that the branching process is more akin to the practice of law, including professional judgment, and should be

compared to the manner in which a lawyer interviews a client and chooses portions of a form depending on the client response, such that the choice of which part of the form to use or omit depends upon the exercise of judgment. LegalZoom contends that the absence of its exercise of judgment is evidenced by the fact that the software would always prepare an identical document for any customer providing the same responses.

{30} In connection with its briefing, the State Bar prepared ten attachments taken from screenshots from the LegalZoom website. These include pages representing documents relating to incorporating a business (The North Carolina State Bar's Br. Supp. Mot. J. on the Pleadings ("State Bar Supp. Br.") Attachs. 4, 5,) preparing a will (State Bar Supp. Br. Attach. 7,) preparing for an uncontested divorce (State Bar Supp. Br. Attach. 8,) and completing a real estate transaction (State Bar Supp. Br. Attachs. 9, 10.) Others include statements expressing opinions regarding the quality or nature of efforts developing the program, including, for example, statements that documents related to forming a business were "developed by attorneys from some of the most prestigious law firms in America," (State Bar Supp. Br. Attach. 1,) that the "documents are trial-tested and have been accepted by courts and governmental agencies in all 50 states," (State Bar Supp. Br. Attach. 2,) and that LegalZoom's "team of experienced attorneys have [sic] designed the LegalZoom Last Will to meet the specific laws and requirements of each U.S. state[,]" (State Bar Supp. Br. Attach. 3.) Other attachments relate to certain assurances, such as that incorporation packages are "backed by a 100% Satisfaction Guarantee[,]" (State Bar Supp. Br. Attach. 6,) that LegalZoom's documents are finalized with a "Peace of Mind Review", and that wills are "backed by our $50,000 Guarantee[,]" (State Bar Supp. Br. Attach. 7.)

{31} LegalZoom also offers screenshots of its website to highlight disclaimers stated at various points throughout the software that LegalZoom is not a law firm and does not provide legal advice, and encourages consulting a lawyer for further legal questions or inquiries. (Compl. ¶ 17, Ex. 5.) The State Bar offers other statements within the software for context such as "we create and file your

incorporation papers," (State Bar Supp. Br. Attach. 1,) "LegalZoom can complete all of these required documents for you, including personalized bylaws and organizational resolutions," (State Bar Supp. Br. Attach. 4,) "[s]imply answer a few questions and we'll create your divorce papers," (State Bar Supp. Br. Attach. 8,) and "[w]e complete your real estate deed[,]" (State Bar Supp. Br. Attach. 10.)

{32}  LegalZoom makes certain statements within the software program regarding legal requirements, such as, for example, a listing of legal criteria necessary for a valid will, (State Bar Supp. Br. Attach. 3,) the consequences of dying intestate, (State Bar Supp. Br. Attach. 3,) the steps required for valid incorporation, (State Bar Supp. Br. Attach. 4,) the advantages of incorporation, (State Bar Supp. Br. Attach. 5,) and requirements for uncontested divorce eligibility (State Bar Supp. Br. Attach. 8.)

{33}  Other details regarding the software may be referred to as necessary during the court's following analysis.

## III.  STANDARD OF REVIEW

{34}  "A motion for judgment on the pleadings is the proper procedure when all the material allegations of fact are admitted in the pleadings and only questions of law remain." *Ragsdale*, 286 N.C. at 137, 209 S.E.2d at 499.  On a 12(c) motion,

> The trial court is required to view the facts and permissible inferences in the light most favorable to the nonmoving party.  All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false. . . . All allegations in the nonmovant's pleadings, except conclusions of law, legally impossible facts, and matters not admissible in evidence at the trial, are deemed admitted by the movant for purposes of the motion."

*Id.* (internal citations omitted).

## IV.  ANALYSIS

{35}  LegalZoom's Motion asserts that the court can and should declare, on the present record, that the State Bar must register LegalZoom's prepaid legal service plans because it has no authority to decline that registration.  The State

Bar's Motion asserts the court can and should declare that LegalZoom is engaged in the unauthorized practice of law and is, therefore, not entitled to any of the relief sought in the Complaint. Each contends that at least certain aspects of the other's Motion is not yet ripe because its resolution depends upon contested fact issues. ((Pl. LegalZoom's Br. Opp'n North Carolina State Bar's Mot. J. on the Pleadings ("LegalZoom Opp'n Br.") 2; State Bar Opp'n Br. 3.)

{36} The court will first address LegalZoom's Motion, followed by its discussion of the State Bar's Motion.

A. **LegalZoom's Motion for Partial Judgment on the Pleadings**

{37} LegalZoom seeks a judgment declaring that the State Bar has limited responsibility with regard to registering prepaid legal services plans, and must register those plans once the applicant has complied with the various administrative aspects of the application, as otherwise the State Bar would be forming or expressing opinions regarding the plans which it is not allowed to do. (LegalZoom.com, Inc.'s Br. Supp. Mot. for Partial J. on the Pleadings ("LegalZoom's Supp. Br.") 1, 15.) The State Bar contends rather that it has the authority to determine whether those plans meet the definition of a "prepaid legal services plan," and that LegalZoom has not yet provided all information necessary to that determination. The issue involves differing interpretations of the State Bar's authority pursuant to 27 N.C. Admin. Code 01E.0303 (2013) ("Administrative Rule").

{38} LegalZoom correctly states that by regulation, the State Bar "shall not approve or disapprove any prepaid legal services plan or render any legal opinion regarding any plan," 27 N.C. Admin. Code 01E.0301 (2013). However, the Administrative Rule further directs the State Bar to:

> review the plan's initial registration statement to <u>determine</u> whether the registration statement is complete and the plan, as described in the registration statement, <u>meets the definition of a prepaid legal services plan</u> and otherwise satisfies the requirements for registration provided by Rule .0304. If, in the opinion of counsel, the plan clearly meets the definition and the registration statement otherwise satisfies the

requirements for registration, the secretary will issue a certificate of registration to the plan's sponsor. <u>If, in the opinion of counsel, the plan does not meet the definition or otherwise fails to satisfy the requirements for registration, counsel will inform the plan's sponsor that the registration is not accepted and explain any deficiencies.</u>

27 N.C. Admin. Code 01E.0305 (2013) (emphasis added).

{39} The court must now determine whether the State Bar has issued a final decision that it has been directed to make, and if so, whether LegalZoom has availed itself of available administrative procedures before seeking court review. If not, the court does not have subject matter jurisdiction because LegalZoom has not exhausted administrative remedies.[2]

{40} The Administrative Procedure Act ("APA") applies to every agency except those specifically enumerated. N.C. Gen. Stat. § 150B-1(c) (2013). The APA defines an "agency" as "an agency . . . in the executive branch of the government of this State . . . ." N.C. Gen. Stat. § 150B-2(1a) (2013). By this definition, the State Bar is an agency, and it is not specifically exempted from the APA. *See* § 150B-1(c); N.C. Gen. Stat. § 84-15 (2013) ("There is hereby created as an agency of the State of North Carolina . . . the North Carolina State Bar."); *see also N. Carolina State Bar v. DuMont*, 304 N.C. 627, 642, 286 S.E.2d 89, 98 (1982) (applying the APA rules to the State Bar Disciplinary Hearing Commission).

{41} The APA generally sets out conditions precedent to judicial review of an administrative determination, including a requirement for a final agency decision and exhaustion of administrative remedies. *Huang v. N. Carolina State Univ.*, 107 N.C. App. 710, 713, 421 S.E.2d 812, 814 (1992).

{42} While the State Bar has not fully explained its underlying reasoning, it raised concerns about LegalZoom coupling its legal document software and legal service plans in a single internet portal, and whether the plans met the definition of

---

[2] This is a different issue than the standing and ripeness issue the court faced when determining whether LegalZoom could seek a court declaration regarding whether it was engaged in UPL before the State Bar, as the agency charged with enforcing the statute, had determined whether it would seek a civil injunction or pursue a criminal investigation. *LegalZoom.com, Inc. v. N. Carolina State Bar*, 2012 NCBC LEXIS 49, at *14–15 (N.C. Super. Ct. Aug. 27, 2012).

a prepaid legal services plan.  It is not clear how the State Bar may have coupled these considerations.

{43}    It is also uncertain whether the State Bar's refusal, to date, to register the plans rests on the State Bar's perception of its own authority to declare that LegalZoom is engaged in the unauthorized practice of law through its cease and desist process, and because of that unilateral determination declare that the legal service plans do not meet the statutory definition.  It is equally unclear if the State Bar contends there are other independent reasons why LegalZoom's plans do not meet the statutory definition.

{44}    Administrative Rule 01E.0303 requires the State Bar to determine whether a particular plan meets the statutory definition of a prepaid legal services plan.  LegalZoom did not force the State Bar to make a final decision or seek a hearing to challenge any purported final determination, as permitted under Administrative Rule 01E.0305.  The record does not yet clarify what conclusion the State Bar has reached on that issue and the basis upon which its decision is made.

{45}    The court has considered LegalZoom's arguments that further pursuit of administrative processes should not be required.  First, the court acknowledges LegalZoom's suggestion that the State Bar spurned LegalZoom's further efforts at the administrative level when it declined an informal meeting with LegalZoom's president.  (Compl. Ex. 19, Am. Answer ¶ 50.)  But, requesting an informal settlement conference does not substitute utilizing the administrative hearing available under Administrative Rule 01E.0305, which provides that, "[u]pon notice that the plan's registration has not been accepted, the plan sponsor may resubmit an amended plan registration form or request a hearing before the committee . . . ." 27 N.C. Admin. Code 01E.0305.

{46}    LegalZoom elected to institute this litigation, rather than to seek such a hearing.  LegalZoom's contentions that the administrative hearing is optional or that it was waived on the grounds of futility are unavailing.  (LegalZoom.com, Inc.'s Reply Br. in Supp. of its Mot. for Partial J. on the Pleadings ("LegalZoom's Reply Br.") 9-10.)  The assertion that the Rule provides only an optional remedy is

foreclosed by the Court of Appeal's decision in *Johnson v. University of North Carolina*, 202 N.C. App. 355, 358–59, 688 S.E.2d 546, 549 (2010). In *Johnson*, the agency's rules provided that the plaintiff "may" appeal an adverse decision to the Board of Trustees. *Id.* at 358, 688 S.E.2d at 549. The plaintiff contended that "because the administrative procedures provide that a faculty member 'may' appeal an adverse decision to the Board of Trustees but do not provide that a faculty member 'shall' appeal, [he] was not *required* to appeal from the decision to discharge him to the Board of Trustees before filing the present action . . . ." *Id.* (emphasis in original). The Court of Appeals rejected the argument, holding that the plaintiff must pursue any administrative remedies provided before seeking judicial review. *Id.* at 358–59, 688 S.E.2d at 549.

{47}    LegalZoom's futility argument is likewise foreclosed by court decisions. *See Affordable Care, Inc. v. N. Carolina State Bd. of Dental Exam'rs*, 153 N.C. App. 527, 571 S.E.2d 52 (2002) ("[F]utility cannot be established by plaintiffs' prediction or anticipation that the Commission would again rule adversely to plaintiffs' interests." )

{48}    The court has also carefully considered LegalZoom's further argument based on *In re North Carolina Pesticide Board*, 349 N.C. 656, 509 S.E.2d 165 (1998), that exhaustion is not required when the agency's action is challenged on constitutional grounds. *In re N. Carolina Pesticide Bd. File Nos. IR 94-128, IR94-151, IR94-155*, 349 N.C. 656, 509 S.E.2d 165 (1998) [hereinafter *Meads*]; (LegalZoom's Reply Br. 10.) There is a distinction between a challenge that an agency has applied a statute in an unconstitutional manner and a facial constitutional challenge to the statute itself. *Meads* teaches that exhaustion applies to the former but not the latter. *Meads*, 349 N.C. at 669–70, 509 S.E.2d at 174–76. Here, on the issue of a failure to register the plans, LegalZoom's Complaint attacks the manner in which the State Bar has applied the governing statutes. (Compl. ¶¶ 63–70.)

{49}    In sum, the court concludes that LegalZoom has failed to exhaust its administrative remedies. *See Vass v. Bd. of Trs. of the Teachers' & State Emps.'*

*Comprehensive Major Med. Plan*, 324 N.C. 402, 408–09, 379 S.E.2d 26, 30 (1989). Accordingly, LegalZoom's Motion for Partial Judgment on the Pleadings is DENIED.

B. <u>The State Bar's Motion for Judgment on the Pleadings</u>

1. **The court's declaration on the primary issue of unauthorized practice of law should await a more developed factual record.**

{50}     LegalZoom's Complaint presents several claims, but each either depends on or involves consideration of the central issue: whether LegalZoom engages in the unauthorized practice of law by offering its internet-based document preparation service. Both LegalZoom and the State Bar seek the court's declaration on that issue. LegalZoom contends that the declaration needs a more developed record. The State Bar contends the court can resolve the issue on the present record.

{51}     The court concludes that a more developed record is appropriate, even if some specific instances of claimed UPL can be isolated for review based on the current record.[3] This decision follows long and careful review of pleadings, briefs, and cited authorities, oral argument presented, and a number of efforts to draft a dispositive ruling consistent with Rule 12(c) standards. Accordingly, the State Bar's Motion for Judgment on the Pleadings should be DENIED in part, as it relates to the unauthorized practice of law issue, without prejudice to the potential later consideration of issues raised by the Motion pursuant to Rule 56. The court further elaborates on its reasoning below.

{52}     The context for deciding the ultimate issue of UPL may vary depending on the particular document or use to which a LegalZoom customer may put the software. The court's interaction with LegalZoom's website during the course of its further consideration amplified this contextual variance which it first recognized when reviewing the briefs. Considering these varying contexts, the court

---

[3] The court will likewise defer further consideration of LegalZoom's motion for jury trial as further efforts are taken to refine the nature of the issues and more specific questions that must be answered.

hopes to be able to apply the governing statutes through a standard that can be consistently applied to the various functions that may arise from use of LegalZoom's software, as well as other forms of software or self-help programs or texts to which LegalZoom's software might be compared.

{53}  The court approaches the matter as one in which it must apply the existing statutes and regulations.  There is a current policy-oriented dialogue in which some urge that the practice of law should be substantially deregulated in favor of market forces.  Proponents of such deregulation argue, in part, that strict application of statutes prohibiting the unauthorized practice of law has yielded economic inefficiency, including but not limited to causing basic legal services to be outside the reach of many or most consumers.[4]  Unless such policy arguments become a necessary part of a constitutional analysis the court is required to undertake, such policy changes are more appropriately addressed to the Legislature and are not now before the court.

{54}  In addition to the variables noted above, the court has also become generally but not specifically aware that LegalZoom may have modified its program or practices from state to state in response either to litigation, as in Missouri or South Carolina, or to regulatory inquiry, as in Ohio or Pennsylvania.  Such distinctions, if they in fact have been made, are not dispositive, but may inform the court's analysis.

{55}  Ultimately, the court looks to the factual record to inform how it must apply the governing North Carolina statutes.  The general prohibition against the unauthorized practice of law is stated in section 84-4 which provides:

> Except as otherwise permitted by law, it shall be unlawful for any
> person or association of persons, except active members of the Bar of
> the State of North Carolina admitted and licensed to practice as
> attorneys-at-law, to appear as attorney or counselor at law in any

---

[4] *E.g.* Ray Worthy Campbell, *Rethinking Regulation and Innovation in the U.S. Legal Services Market*, 9 N.Y.U. J. L. & Bus. 1 (2012) (arguing in favor of deregulating a legal services on the individual side of the market to promote innovation and better customer choices); Gillian K. Hadfield, *The Cost of Law: Promoting Access to Justice Through the (Un)Corporate Practice of law*, Int'l Rev. L. & Econ. (forthcoming), available at http://ssrn.com/abstract=2333990 (observing that the current business model for delivering legal services prices many ordinary individuals out).

action or proceeding before any judicial body, including the North Carolina Industrial Commission, or the Utilities Commission; to maintain, conduct, or defend the same, except in his own behalf as a party thereto; or, by word, sign, letter, or advertisement, to hold out himself, or themselves, as competent or qualified to give legal advice or counsel, or to prepare legal documents, or as being engaged in advising or counseling in law or acting as attorney or counselor-at-law, or in furnishing the services of a lawyer or lawyers; and it shall be unlawful for any person or association of persons except active members of the Bar, for or without a fee or consideration, to give legal advice or counsel, perform for or furnish to another legal services, or to prepare directly or through another for another person, firm or corporation, any will or testamentary disposition, or instrument of trust, or to organize corporations or prepare for another person, firm or corporation, any other legal document. . . . The provisions of this section shall be in addition to and not in lieu of any other provisions of this Chapter.

N.C. Gen. Stat. § 84-4 (2013). Chapter 84 does not define various terms, including "hold out," "legal advice or counsel," "legal document(s)," or "legal services."

{56}    Section 84-2.1 defines the "practice of law" as:

performing any legal service for any other person, firm or corporation, with or without compensation, specifically including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, or preparing or aiding in the preparation of any petitions or orders in any probate or court proceeding; abstracting or passing upon titles, the preparation and filing of petitions for use in any court, including administrative tribunals and other judicial or quasi-judicial bodies, or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person, firm or corporation[.]

N.C. Gen. Stat. § 84-2.1 (2013).

{57}    Section 84-5 further prohibits corporations from practicing law, and in doing so, lists additional activities which may supplement the definition of "the practice of law." It provides:

It shall be unlawful for any corporation to practice law or appear as an attorney for any person in any court in this State, or before any judicial body or the North Carolina Industrial Commission, Utilities Commission, or the Department of Commerce, Division of Employment Security, or hold itself out to the public or advertise as being entitled to practice law; and no corporation shall organize corporations, or draw

agreements, or other legal documents, or draw wills, or practice law, or give legal advice, or hold itself out in any manner as being entitled to do any of the foregoing acts, by or through any person orally or by advertisement, letter or circular. The provisions of this section shall be in addition to and not in lieu of any other provisions of Chapter 84.

N.C. Gen. Stat. § 84-5 (2013).

{58}     The court discerns at least three intersecting principles arising from these statutes, that, when considered in light of case precedent both within and without North Carolina, must be accommodated in the overall analysis.  Two of these principles represent the reasoning in reported cases recognizing what has been referred to as "exceptions" on UPL prohibitions.  The first has been referred to as either "self-help" or the "self-representation" exception, essentially meaning that one can legally undertake activities in his own interests that would be UPL if undertaken for another, or to "practice law" to represent oneself.  The second exception has been referred to as a "scrivener's exception," essentially meaning that unlicensed individuals may record information that another provides without engaging in UPL as long as they do not also provide advice or express legal judgments.  The third, less-litigated principle arises from the statutory prohibitions on "holding out".[5]  Applying this principle may become entangled with First Amendment issues.[6]

{59}     Analyzing LegalZoom's software requires consideration of each of these three principles.  The respective briefs concentrate most heavily on whether LegalZoom's software is protected by the two exceptions.  That is, whether or not the software acts as a mere scrivener or appropriately assists customers who are engaged in self-representation.  The briefs do recognize the First Amendment considerations at play, but do not include as extensive an effort to apply the "holding out" prohibitions specifically in the context of how LegalZoom's software

---

[5] In addition to the provisions of section 84-4 prohibiting holding oneself out as competent to provide legal advice or counsel, there are administrative regulations that direct that a lawyer who is not admitted to practice in this jurisdiction shall not: . . . . hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction." 27 N.C. Admin. Code 02, Rule 5.5(b) (2013).

[6] *See, e.g., Dacey v. New York Cnty. Lawyers' Ass'n*, 423 F.2d 188 (balancing an individual's First Amendment rights against a prosecutor's sovereign immunity).

works and how it is marketed to encourage customers more confidently to engage in self-representation. For example, they do not extensively discuss (1) how LegalZoom's own statements embodied in the website should regulate or qualify the application of the two recognized exceptions, if those statements are intended to, and actually do, instill greater customer confidence in self-representation, or (2) how such statements should be read together against the backdrop of the public policies promoted by the statutory prohibitions on "holding out."

{60} A useful summary of the "self-help exception" or "self-representation exception" may be found in the oft-cited opinion in *The Florida Bar v. Brumbaugh*, 355 So. 2d 1186 (Fla. 1978). *Brumbaugh* recognizes that (1) each person has a fundamental constitutional right to represent themselves, and (2) individuals may sell sample legal forms and "type up" instruments that clients have filled out without engaging in the practice of law. *Brumbaugh*, 355 So. at 1194.

{61} The North Carolina Supreme Court recognized this right of self-representation and further extended the right to allow corporate agents to prepare certain legal documents on behalf of the corporation so long as the efforts were to advance a matter in which the corporation had a primary interest. *State v. Pledger*, 257 N.C. 634, 127 S.E.2d 337 (1962).[7] The defendant in *Pledger* was an employee of a company engaged in the sale and construction of homes, but was not licensed to practice law or a member of The North Carolina Bar. *Id.* at 634, 127 S.E.2d 337. The defendant prepared several deeds of trust, and saw to the execution, acknowledgement, and recordation of those deeds, for homes that the company sold. *Id.* The Supreme Court held that the defendant did not engage in the unauthorized practice of law, because "[a] person, firm or corporation having a primary interest, not merely an incidental interest, in a transaction, may prepare legal documents necessary to the furtherance and completion of the transaction without violating [the law]." *Id.* at 637, 127 S.E.2d at 339.

{62} LegalZoom champions *Pledger* as granting its customers the right of self-help. LegalZoom does not assert that it has a primary interest in its customer's

---

[7] This case did not explicitly speak to the offer or sale of legal forms or self-help software.

legal affairs.  LegalZoom's position is rather that it lawfully assists its customer in self-representation and in the process of recording the customer-supplied information, LegalZoom does not make legal judgments or offer customer advice tailored to the customer's individual circumstance.   LegalZoom's contention is that its recording of information falls comfortably within the recognized "scrivener" exception.

{63}    The "scrivener exception" has not, to the court's knowledge, been considered by the North Carolina state appellate courts.  It has been considered in a federal bankruptcy court sitting in North Carolina, which described the exception as "merely typing or 'scrivening' a petition or legal document for another person".  *In re Graham*, No. 02-81930C-7D, 2004 Bankr. LEXIS 1678 (M.D.N.C. Feb. 10, 2004); *see also In re Lazarus*, No. 05-80274C-7D, 2005 Bankr. LEXIS 1093 (Bankr. M.D.N.C. Mar. 14, 2005).  While recognizing the exception, these cases are also careful to caution scriveners against going further so as to provide advice.  In *Lazarus*, the Bankruptcy Court held that a petition preparer, Ms. Couch, engaged in the unauthorized practice of law in violation of § 110 of the Bankruptcy Code.  *In re Lazarus*, 2005 Bankr. LEXIS at *14–15.  Ms. Couch was found to have exceeded the limited scrivener exception because "the evidence reflected that the Debtor had no understanding [of the matters in the bankruptcy forms] and that Ms. Couch counseled and advised the Debtor regarding such matters and that in some instances actually decided what information would be inserted in the forms."  *Id.* at *15.

{64}    The petition preparer in *Graham* was also held to have engaged in the practice of law as it is defined by section 84-2.1, *In re Graham*, 2004 Bankr. LEXIS 1678, at *36–40, where she provided clients with a workbook, a pamphlet providing a step-by-step guide to filling out the workbook, and information on filing for Chapter 7 bankruptcy.  *Id.* at *5–6.  The Bankruptcy Court held that

> [t]he Workbook and Guide are intended to clarify the information
> required on the official forms for the petition, schedules and statement
> of financial affairs.  A review of these documents reveals that they
> constitute legal advice when provided by a petition preparer to a

> customer for whom bankruptcy documents are being prepared. The
> Workbook to be completed by the customer is not merely a blank copy
> of the official forms. Rather, it is a document prepared by We The
> People USA which, together with the Guide and Overview, contains
> advice to the customer concerning bankruptcy law and how the blanks
> in the Workbook should be completed. . . . While § 110 allows a
> bankruptcy petition preparer to type bankruptcy forms, it does not
> allow the petition preparer 'to provide documents that explain
> bankruptcy or how to complete the required information that the
> preparer is then to transfer to the Official Forms.'

*Id.* at \*38–39 (citing *In re Moore*, 283 B.R. 852, 863 (Bankr. E.D.N.C. 2003)). The
court continued that, by taking the information the customer filled out in the
Workbook and entering it into an official form on a computer, which differed from
the Workbook the customer filled out, the preparer had engaged in the practice of
law. *Id.* at \*39.

{65}     In some instances, LegalZoom's software operations may comfortably
remain within the permissible boundaries of these cases, such as where a legal form
closely tracks a state agency form, the information a customer supplies is routine,
and no significant part of the form is added or omitted based on customer
responses. There are other aspects of the LegalZoom program that may not
comfortably fit the scrivener exception, such as instances where LegalZoom may,
either by itself or in association with another, go beyond recording information, for
example, in obtaining or approving legal descriptions for deeds, reviewing and
assessing potentially interfering trademarks, or taking actions to finalize
incorporation.

{66}     The court is not yet comfortable that it understands the overall process
of preparing more complex documents, and hopes to develop a greater
understanding of how the branching software process is implemented in preparing
such documents, including whether and how a customer's answer to one question
effects what further parts of the template are offered and what further choices the
customer is asked to make. Questions include, for example, if a customer makes
one choice presented to him by the branching software, are there portions of the
template that are then never shown to the customer? If so, what is the reasoning

behind and the legal significance of the software's determination not to present that portion of the form?  If *Pledger* teaches that an unlicensed individual has the right to "practice law" on his own behalf, *Pledger*, 257 N.C. at 636, 127 S.E.2d at 339, does its premise require that only the unlicensed individual make choices in drafting a legal document, and that the choice or risk of an incorrect choice about which portions of a form to include must belong exclusively to the individual?  Is there then a legally significant difference between how one engaging in self-representation uses a form book versus LegalZoom's interactive branching software?  A form book presents the customer with the entire form, often accompanied by opinions or directions on how to use the form, but any choice and its implications are solely the customer's.  Does the LegalZoom software effectively make choices for its customer?   Do responses depend in any part on the effects of statements embodied in the software, either those that promote the program or those that disclaim legal advice being given?

{67}   The court does not by any means suggest these are the controlling or only relevant questions or that they have certain answers.  Rather, they are examples of questions the court is not comfortable answering based on the current record alone.

{68}   As to the statutory prohibitions on "holding out," the court will be required to seek a balance between the public interest being protected, and the corresponding First Amendment rights LegalZoom may have.  The court remains uncertain how the interplay of those potentially competing rights and interests should affect the court's overall interpretation of UPL statutes, including application of recognized exceptions.

{69}   In sum, the court determines that a greater factual record will help shape and answer these and other questions.  The court then concludes that the issue of unauthorized practice of law should not be decided at this juncture pursuant to the State Bar's Motion, and the State Bar's Motion in that regard should be DENIED without prejudice to revisiting the issues pursuant to Rule 56.

### 2. Certain claims should, however, be dismissed at this juncture.

#### a. LegalZoom's equal protection claim depends on the plan registration issue for which LegalZoom has not yet exhausted its administrative remedies.

{70}     LegalZoom's equal protection claim derives from its claim that the State Bar has unlawfully failed to register the prepaid legal services plans.[8]   This is a type of constitutional claim for which exhaustion of administrative remedies is appropriate. *Copper ex rel. Copper v. Denlinger*, 363 N.C. 784, 788–90, 688 S.E.2d 426, 428–30 (2010) (distinguishing between state constitutional claims and claims relating to the U.S. Constitution).  As LegalZoom did not exhaust its administrative remedies with respect to the State Bar's refusal to register the plans, the equal protection claim is DISMISSED without prejudice to its being refiled should a final agency determination return to the court for review.

#### b. LegalZoom's commercial disparagement and declaratory judgment claims as stated should be dismissed on the basis of sovereign immunity.

{71}     LegalZoom contends it has been defamed by the State Bar's publication of claims that LegalZoom's conduct is illegal. (Compl. ¶¶ 71–79.)  The State Bar contends that LegalZoom's claim for commercial disparagement is barred by sovereign immunity.  (State Bar Supp. Br. 23–24.)   LegalZoom challenges the defense as being inapplicable where a state agency has acted beyond its authority. (LegalZoom Opp'n Br. 23–24).

{72}     Sovereign immunity protects a State agency from suit absent a waiver of its immunity.  *Walton v. N. Carolina Dep't of Agric. & Consumer Servs.*, No. 5:09-CV-302-FL, 2010 U.S. Dist. LEXIS 143680, at * 7 (W.D.N.C. Feb. 17, 2010) (internal citations omitted); *see also Gammons v. N. Carolina Dep't of Human Res.*, 344 N.C. 51, 54, 472 S.E.2d 722, 723 (1996).  A state agency is entitled to this immunity, as is the State itself.  *See Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997)

---

[8] LegalZoom brings its equal protection claim on the basis that the State Bar singled it out, "not allowing Plaintiff to register its legally compliant prepaid legal services plans." (Compl. ¶ 69.)

{73}    LegalZoom has not argued that the State Bar has waived its immunity, *see* (State Bar Supp. Br 24; LegalZoom Opp'n Br. 23–24,) and in any case, waiver must be specifically pleaded. *Paquette v. Cnty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717–18 (2002). The court cannot assume waiver under the Tort Claims Act, as the claim for commercial disparagement is an intentional tort. N.C. Gen. Stat. §§ 143-291–300.1 (2013); *White v. Trew*, 366 N.C. 360, 364, 736 S.E.2d 166, 168–69 (2013) (libel); *Davis v. N. Carolina State Highway Comm'n*, 271 N.C. 405, 408, 156 S.E.2d 685, 687 (1967); *Wojsko v. State*, 47 N.C. App. 605, 610–11, 267 S.E.2d 708, 711 (1980) (false representation and fraudulent inducement).

{74}    As to LegalZoom's contention that the defense is inapplicable where the agency has exceeded its authority, the court notes that LegalZoom has not included any individual defendant who acted or failed to act on the agency's behalf. While individual officers may be subject to suit when acting within the scope of their state agency but beyond the agency's legal authority, *Lewis v. White*, 287 N.C. 625, 643, 216 S.E.2d 134, 146 (1975) (quoting *Schloss v. Highway Commission*, 230 N.C. 489, 53 S.E.2d 517 (1949)), *superseded on other grounds by statute as noted in State v. Williams & Hessee*, 53 N.C. App. 674, 680, 281 S.E.2d 721, 725 (1981), the agency itself remains immune from suit, as it is "powerless to exceed its authority as is a robot to act beyond the limitations imposed by its own mechanism." *Schloss*, 230 N.C. at 492, 53 S.E.2d at 518–19.

{75}    The court is compelled to apply immunity even though LegalZoom seeks only a declaratory judgment that the State Bar has acted without legal authority to make or disseminate a purported final or binding determination that LegalZoom's conduct is illegal.[9] Claims for injunction and declaratory judgment, in addition to those for money damages, are subject to the doctrine of sovereign

---

[9] The court recognizes a reading of Administrative Rule 01D.0206 that would limit the State Bar's use of a Cease and Desist Letter to only those instances where it believes there to be probable cause that there has been UPL, <u>and</u> that the conduct is not likely to be continued, and that otherwise, the State Bar must pursue either criminal or civil court actions. The court expresses no opinion on whether a claim based on this Rule is now moot because the State Bar has since brought its counterclaim.

immunity. *Bio-Med. Applications of N. Carolina, Inc. v. N. Carolina Dep't of Health & Human Servs., Div. of Facility Servs.*, 179 N.C. App. 483, 491, 634 S.E.2d 572, 578, *writ allowed, rev. on additional issues denied*, 360 N.C. 644, 638 S.E.2d 463 (2006) (upholding a trial court's dismissal of the plaintiff's permanent injunction and declaratory judgments claims against a state agency on the basis of sovereign immunity).

{76}    Therefore, LegalZoom's commercial disparagement claim and corresponding petition for declaratory judgment, as stated, are DISMISSED.

### c. While the monopoly claim may survive the invocation of sovereign immunity, it should await resolution along with the central issue of whether LegalZoom is engaged in UPL.

{77}    LegalZoom's monopoly claim revolves around, if not totally depends upon, its contention that its document preparation service does not constitute the unauthorized practice of law and that the State Bar's effort to exclude that service would be an unconstitutional effort to protect a monopoly on the practice of law, prohibited under the North Carolina Constitution. Sovereign immunity does not bar that particular claim. "When there is a clash between these constitutional rights and sovereign immunity, the constitutional rights must prevail." *Craig ex. rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 339, 678 S.E.2d 351, 355 (2009). Unlike LegalZoom's equal protection claim, its monopoly claim is not solely based on the State Bar's refusal to register its prepaid legal services plans, and thus is not subject to dismissal for failure to exhaust administrative remedies.

## V.    CONCLUSION

{78}    For the foregoing reasons:

1. LegalZoom's Motion for Partial Judgment on the Pleadings is DENIED, without prejudice to the court's consideration of the issues presented upon the State Bar's final determination whether it will register LegalZoom's prepaid legal services plans.

2. The State Bar's Motion for Judgment on the Pleadings is GRANTED as to LegalZoom's equal protection and commercial disparagement claims, and for declaratory relief insofar as related to those claims; therefore
    i. LegalZoom's equal protection claim is DISMISSED without prejudice.
    ii. LegalZoom's claims for commercial disparagement and declaratory judgment, as stated, are DISMISSED.
3. The State Bar's Motion is otherwise DENIED without prejudice to the further consideration of the issues raised upon a subsequent motion for summary judgment.
4. The court wishes to hold a status conference in advance of the Parties undertaking discovery or designating expert witnesses. Counsel are asked to consult and advise the court within five business days of the issuance of this Order of two days in April 2014 on which the Parties would be available for such a conference.

This 24th day of March, 2014.